Nadeau v. SSA                             05-CV-020-SM  01/19/06
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Leon Nadeau,
      Claimant

      v.                                  Civil No. 05-cv-20-SM
                                          Opinion No. 2006 DNH 006
Jo Anne Barnhart, Commissioner,
Social Security Administration,
      Respondent


                          **O R D E R**


     Pursuant to 42 U.S.C. § 405(g), claimant, Leon Nadeau, moves to reverse and remand the Commissioner's decision that he received an overpayment of Social Security disability insurance benefits and that he is not entitled to a waiver of recovery of that overpayment because he was not without fault in procuring it. The Commissioner, in turn, moves for an order affirming her decision. For the reasons given below, the decision of the Administrative Law Judge ("ALJ") is affirmed.


                        **Standard of Review**

     The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . .

42 U.S.C. § 405(g).

The Commissioner's findings of fact be supported by substantial evidence.  "The substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917–18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole."  Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st

Cir. 1991) (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## Background

The following summary of the factual background of this case is drawn from the Joint Statement of Material Facts (document no. 15, hereinafter "Jt. Statement") and the Administrative Transcript (hereinafter "Tr.").

On January 28, 1997, Nadeau was sent an award letter, informing him that he was found to be disabled as of November 8, 1995, and was entitled to benefits starting in May 1996. He also received workers's compensation benefits, which ended with the payment of a lump-sum settlement on March 17, 2000. (Tr. at 46-47.)

During the time periods relevant to the matter before the court, Nadeau was paid the following disability benefits: $109 per month from July through November 1999, $135 per month for December 1999 and March 2000, $1091 per month from April 2000 through November 2000, and $1129 per month from December of 2000

through January 2001.  (Jt. Statement at 3.)  (Nadeau's benefit history is complicated somewhat by a retroactive payment of $5736 in October 2000, but based on the Joint Statement of Material Facts, all agree the effect of the retroactive payment was to increase Nadeau's effective monthly benefit to $1091 from April through October 2000.)  Nadeau's last regular benefit check was for January 2001.

Nadeau returned to work in July 1998, and earned $2154.50 that month, $1616.10 in August, $1582.35 in September, $2091.70 in October, $1641.65 in November, and $2052.43 in December.  He also worked in each month of 1999, earning between $794 (December) and $2336.42 (July) per month.  (Jt. Statement at 4.) According to claimant's own testimony, he worked from March 2000 through the date of his March 13, 2003, hearing (Tr. at 37), but his earnings during that period are not included in the Joint Statement of Material Facts.[1]

---

[1] In his decision, the ALJ referred to "Administrative electronic records indicat[ing] that the claimant received from G.V. Moore Lumber Co., Inc. earnings of $22,432.10 in 2000, $30,254.31 in 2001, and $32,879.24 in 2002." (Tr. at 12.) Copies of the "Administrative electronic records" on which the ALJ relied are not included in the Administrative Transcript. Claimant criticizes the Commissioner and the ALJ for failing to subpoena his 2000, 2001, and 2002 pay stubs, but, when he had the

By letter dated February 24, 2002, the Social Security Administration ("SSA") informed Nadeau that he had been paid $11,808 in benefits to which he was not entitled. That letter stated, in relevant part:

> Earlier, we wrote to tell you that we had information about your work and earnings that could affect your Social Security disability payments. We also told you that we planned to decide that your disability ended because of your substantial work. We are now writing to tell you our decision.
>
> We have decided that your disability has ended and that you are not entitled to Social Security disability payments for July 1999 through December 1999 and beginning March 2000.
>
> **Information About Your Payments**
>
> Your payments continued during your period of 9 trial work months while you tested your ability to work. Your trial work period ended March 1999.
>
> You are entitled to payments for January 2000 through February 2000 because your work was not substantial for that time. However, you are not entitled to payments beginning March 2000 because you returned to substantial work.

---

chance, he did not introduce those pay stubs into evidence at his hearing, and he does not now assert that they demonstrate earnings below the level necessary to establish substantial gainful activity.

(Tr. at 82.)  Nadeau filed a Request for Reconsideration in which he stated:

> I disagree with the alleged amount of the overpayment.  I was not overpaid $11,808.00.  An earlier notice told [me] I was overpaid July 1999 to December 1999.  That does not equal $11,808.00.  I also did not receive any disability benefits in 2002.  I notified Social Security when I went back to work.
>
> Please provide me with a month by month breakdown of this alleged overpayment and proof that I received benefits in 2002.

(Tr. at 52, 54.)

In response, Nadeau received the following special determination dated May 10, 2002:

> You received $64.00 for the month of 07/99.  Because of increases paid in a check for $315.00 in 08/99, your effective [payment] for 07/99 was $109.00.
>
> You were paid $109.00 for 8/99 through 11/99 and $135.00 for 12/99 through 03/00.
>
> Even though your checks for the period 04/00 through 10/00 were $135.00 per month, the effective [payment] was increased by a retroactive amount paid in 10/00.  The retroactive check of $5736.00 you received in 10/00 effectively increased your monthly benefit amount to $1091.00 effective 04/00.  Thus, you were paid $1091.00 per month for the period 04/00 through 09/00.

> Your actual payments for 10/00 and 11/00 were $1091.00 per month.
>
> You were also paid $1129.00 for 12/00 and 01/01.
>
> No Social Security payments were made after the 02/03/01 check.
>
> Based on your work and earnings, no benefits are payable for 07/99 through 12/99 and 03/00 and thereafter.
>
> Thus, the overpayment is calculated as follows:
>
> $109.00 per month for 07/99 through 11/99= $545.00
> $135.00 for 12/99= $135.00
> $135.00 for 03/00= $135.00
> $1091.00 per month for 04/00-11/00= $8728.00
> $1129.00 per month for 12/00 and 01/01= $2258.00
>
> This totals $11801.00
>
> You received a retroactive check in 2001 because of a cost of living correction.  Because of your work $7.00 was not due.
>
> Thus the total overpayment is correct as is- $11808.00

(Tr. at 55).  Nadeau responded by filing a Request for Hearing by Administrative Law Judge, dated June 26, 2000, in which he stated: "I think I am without fault in creating the overpayment. It would be against equity and good conscience to try and collect this overpayment.  No explanation was given for alleged increases in checks for 8/99 or 10/00.  The whole explanation is very confusing."  (Tr. at 65.)

In the notice of hearing the ALJ sent Nadeau, the issues to be addressed were set out as follows:

> The general issues are whether you were overpaid benefits within the meaning of section 1631 of the Social Security Act and, if so, whether recovery of the overpayment may be waived.
>
> The specific issues are whether you were "without fault" as defined in Social Security regulation 416.552 in causing the overpayment and, if so, whether recovery of the overpayment would (1) defeat the purpose of Title XVI of the Act, as defined in Social Security regulation 416.553, (2) be against equity and good conscien[c]e as defined in Social Security regulation 416.554.

(Tr. at 70.) By letter dated February 26, 2003, Nadeau's counsel disputed inclusion of the waiver issue, noting that Nadeau had "not yet requested a waiver [of recovery], as [he was] challenging the amount and circumstances surrounding these lump sum payments in 2000, as well as whether Social Security properly calculated [his] trial work period from July 1998 to March 1999." (Tr. at 77.)

ALJ Frederick Harap held a hearing on March 13, 2003, after which Nadeau's counsel filed a letter/memorandum arguing that "claimant's overpayment claim should be dismissed . . . for a

failure by SSA to provide [him] with the necessary information to adequately respond to a claimed overpayment of $11,808.00." (Tr. at 79.)  Counsel went on to identify several specific types of information that were not provided: (1) copies of all Social Security checks Nadeau endorsed during the relevant time period; (2) an explanation of how Nadeau's trial work period was applied against the period of alleged overpayment; and (3) a workers' compensation offset worksheet.  (Tr. at 79-80.)

ALJ Harap's decision includes the following relevant findings of fact:

1.  The claimant completed his nine-month trial work period in March 1999.

2.  The claimant began a 36-month reentitlement period in April 1999 which continued through March 2002.

3.  The claimant continued working at a substantial gainful activity level in April 1999; his disability therefore ceased as of that month with benefits continuing through June 1999.

4.  The claimant continued to engage in substantial gainful activity during the reentitlement period in the months of July 1999 through December 1999 and March 2000 through March 2002.

5.  The claimant was not entitled to receive benefits during th[o]se months in which he engaged in

9

>       substantial gainful activity during the
>       reentitlement period.
>
> 6.    The claimant received a total of $11,808.00 paid
>       in months in which he engaged in substantial
>       gainful activity during the reentitlement period
>       to which he was not entitled; this total of
>       $11,808.00 constitutes an overpayment.
>
> 7.    The claimant failed to report his work activity to
>       the Administration, constituting a failure to
>       provide information which he knew or reasonably
>       should have known t[o] be material.
>
> 8.    The claimant was not without fault in procuring
>       the overpayment (20 CFR § 404.507).
>
> 9.    Recovery of the overpayment totaling $11,808.00 is
>       not waived (20 CFR § 404.506).

(Tr. at 15-16.)

## Discussion

Claimant advances two arguments.  First, he contends that the Commissioner failed to properly develop the record before issuing a notice of overpayment.  In particular, he points to the Commissioner's failure to provide copies of the benefit checks he is alleged to have received and to SSA's failure to explain the operation of the trial work provisions and the extended-period-of-eligibility program.  Second, he argues that the ALJ's determination that he was not without fault in procuring the

overpayment is not supported by substantial evidence because of the SSA's failure to: (1) promptly adjust his monthly benefit upon settlement of his workers compensation claim; and (2) explain to him the nature of the payments he received in 1999 and 2000.  Based upon the foregoing, claimant asks the court to: (1) remand the Commissioner's decision to deny reconsideration regarding the amount of overpayment for further factfinding and development; and (2) reverse or remand the Commissioner's decision denying waiver of recovery, because that issue was not properly before the ALJ and because the ALJ's decision was not supported by substantial evidence.  Respondent objects, categorically, and also points out that claimant does not deny receiving the benefits at issue here, nor does he deny working from March 2000 through March 2002, as found by the ALJ.

A. The Relevant Law

    The Social Security Act provides, in pertinent part:

> With respect to payment to a person of more than the correct amount, the Commissioner of Social Security shall . . . require such overpaid person or his estate to refund the amount in excess of the correct amount . . . .

11

42 U.S.C. § 404(a)(1)(A).  The statute further provides:

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.  In making for purposes of this subsection any determination of whether any individual is without fault, the Commissioner of Social Security shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have (including any lack of facility with the English language).

42 U.S.C. § 404(b).  A Social Security recipient who has been overpaid may take advantage of the foregoing provision by requesting a waiver of adjustment or recovery, under procedures described in 29 C.F.R. § 404.501 et seq.

While the Social Security Act does not indicate which party bears the burden of proving the fact and amount of overpayment, the three circuits that have addressed the issue "held that the Commissioner has this burden."  McCarthy v. Apfel, 221 F.3d 1119, 1124 (9th Cir. 2000) (citing Cannuni ex rel. Cannuni v. Schweiker, 740 F.2d 260, 263 (3d Cir. 1984); United States v. Smith, 482 F.2d 1120, 1124 (8th Cir. 1973)).  On the other hand,

"the individual [seeking waiver of recovery] bears the burden of establishing that he has met the requirements of § 404(b) of the Social Security Act."  Banuelos v. Apfel, 165 F.3d 1166, 1170 (7th Cir. 1999), overruled on other grounds, (citation omitted); see also Valente v. Sec'y, HHS, 733 F.2d 1037, 1042 (2d Cir. 1984); Sierakowski v. Weinberger, 504 F.2d 831, 836 (6th Cir. 1974).

B. Overpayment

Claimant asks the court to remand for further factfinding on the issue of overpayment, arguing that the ALJ's decision was either not supported by substantial evidence or rested on information not made part of the record.  There is no cause for remand.

The Joint Statement of Material Facts lists the benefits claimant received from July 1999 through January 2001, and also lists his earnings from July 1998 through December 1999.  Those stipulated facts establish: (1) a trial work period running from July 1998 through March 1999, see 42 U.S.C. § 422(c); 20 C.F.R. § 1592; (2) ineligibility for benefits from July through December

13

1999, see 20 C.F.R. § 1592a; and, consequently, (3) an overpayment for that period.  At issue is the ALJ's determination that claimant was overpaid from March 2000 through January 2001, due to his substantial gainful employment.[2]

While claimant's employment history from March 2000 onward is not documented by a Form SSA-L725, as is his employment from July 1998 through December 1999, claimant testified at his hearing that he had been employed, continuously from March 2000 onward, by J.B. Morria's Lumber.  In addition to that testimony, the ALJ relied upon certain "Administration electronic records" that he described in his decision but did not include in the Administrative Transcript.  Claimant contends that the Commissioner is at fault for not interviewing him concerning his earnings at J.B. Morria, or asking him to produce his pay stubs.  But claimant did not testify at his hearing (nor does he now claim) that his earnings at J.B. Morria fell below the threshold for establishing substantial gainful employment.  Because

---

[2] While claimant argues at some length, in his brief, that he challenges the sufficiency of the evidence on which the ALJ based his findings concerning the amount of benefits claimant was paid, that argument would seem to be mooted by the Joint Statement of Material Facts.

claimant does not now contend that he was not gainfully employed, had the opportunity to testify regarding his earnings, and could have placed his pay stubs into evidence at his hearing but did not do so, there is little reason to think that remand would result in the presentation of evidence favorable to claimant with regard to his gainful employment status.  Moreover, claimant's testimony about his continuous employment, coupled with his failure to testify that he earned less than the threshold amount for substantial gainful employment, constitutes substantial evidence that claimant was engaged in substantial gainful employment from March 2000 through March 2002, the end of his reentitlement period.  Accordingly, the Commissioner's decision regarding overpayment is affirmed.

C. Waiver of Recovery

   The ALJ determined that claimant did not qualify for a waiver of recovery.  Claimant advances two arguments in opposition:  1) that the decision should be reversed because the question of waiver was never properly before the ALJ; and 2) that the issue should be remanded for further factfinding.  Both arguments lack merit.

Claimant's argument that the ALJ should not have considered the waiver issue is not well-founded, given that claimant introduced that issue into the case in the first place. In his April 18, 2002, Request for Reconsideration, claimant challenged the amount SSA said he had been overpaid. (Tr. at 52.) In his June 26, 2002, Request for Hearing by Administrative Law Judge, claimant stated he wanted a hearing because: "I think I am without fault in creating the overpayment. It would be against equity and good conscience to try and collect this overpayment." (Tr. at 65.) Not coincidentally, claimant's statement of the issues precisely tracked the statutory criteria for granting a waiver of recovery. Given that claimant's request for a hearing plainly raised the recovery waiver issue, it is difficult to see how he can now argue that the issue of waiver was not properly before the ALJ. Moreover, Nadeau did not assert, in his Request for Hearing, that SSA wrongly determined that he had been overpaid or wrongly calculated the amount of overpayment, leaving waiver of recovery the only issue squarely raised for the ALJ's consideration. Resolution of that issue by the ALJ denied claimant the opportunity to take advantage of the procedures

16

described in 29 C.F.R. § 404.501 et seq., but bypassing those procedures was claimant's own choice.

Claimant's substantive argument that the ALJ wrongly determined he was not eligible for a waiver of recovery rests on the confusing history of his benefit payments which includes, among other things, increases in benefits that were not explained to him, confusion surrounding the interplay between his workers' compensation benefits and his Social Security benefits, and a large retroactive benefit payment he received in October 2000. Claimant may well have been confused about the payments he received, but the fact remains that he engaged in substantial gainful employment for eighteen consecutive months, beginning in July, 1998, thus completing a nine-month trial work period in March 1999.  Moreover, whether he was confused at the time or not, claimant offers no legal theory or facts that would support a reasonable belief that he was entitled to Social Security benefits from July through December 1999, or from March 2000 onward.[3]  Yet, he continued to collect checks from SSA.

---

[3] Claimant's counsel suggests he believed claimant was entitled to a trial work period from April 2000 through the end of that year, but any such belief is clearly erroneous based upon the undisputed factual record of claimant's earnings from July

17

At the hearing before the ALJ, claimant's counsel stated that he and/or claimant had notified the Nashua SSA office that claimant had returned to work.  (Tr. at 23.)  That claim appears, in conclusory fashion, in Nadeau's April 18, 2002, Request for Reconsideration (Tr. at 54), and is repeated in claimant's brief (Pl.'s Mem. at 3), but claimant never testified to that fact at the hearing; no evidence to support it was introduced at the hearing; and it does not appear in the Joint Statement of Material Facts.  Thus, considering the record as a whole, and claimant's burden of proving otherwise, substantial evidence supports the ALJ's determination that claimant was not without fault for the overpayment because he "failed to furnish information to the Administration related to his work activity . . . that he knew or should have known . . . was material." (Tr. at 15.)

Based upon the record before the ALJ, there was also substantial evidence to support a conclusion that claimant was not without fault because he accepted "payment[s] which he either knew or should have been expected to have known [were]

---

1988 through December 1999.

incorrect." 20 C.F.R. § 404.507. Starting in July 1998, claimant engaged in substantial gainful activity for approximately fifty-four of the next fifty-six months (July 1998 through December 1999, and March 2000 through March 2003). No matter how confusing his SSA payments may have been to him, no plausible argument can be constructed under which claimant cannot be charged with knowing that his payments from July 1999 onward were incorrect.

Finally, in light of the foregoing, coupled with claimant's failure to identify any statutory mitigating factor (i.e., physical, mental, educational, or linguistic limitations) that he might be able to prove at a rehearing, or any argument based upon the purposes of the Social Security Act or equity and good conscience, there is simply no basis for remanding this case for further factual development on the issue of waiver of recovery.

### Conclusion

For the reasons given, claimant's motion for an order reversing the order of the Commissioner (document no. 13) is denied and, necessarily, the Commissioner's motion for an order

affirming her decision (document no. 14) is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

                                                          _____
                                                          Steven J. McAuliffe
                                                          Chief Judge

January 19, 2006

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.